Julius B. Black v. Commissioner. Clyde W. Black v. Commissioner.
Black v. Commissioner
Docket Nos. 10360, 10361.
United States Tax Court
1947 Tax Ct. Memo LEXIS 301; 6 T.C.M. (CCH) 167; T.C.M. (RIA) 47039; February 20, 1947
*301 Marion Hirschburg, Esq., 300 1/2 Main St., Ames, Ia., for the petitioners. Harold H. Hart, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion At the request of counsel for petitioners and respondent the above cases were consolidated for trial. The case of Clyde W. Black involving a deficiency in income tax for the year 1943 in the sum of $12,763.76. The case of Julius B. Black involved a deficiency for the same year in the sum of $12,458.82. These deficiencies are based upon adjustments made for both the years 1942 and 1943 and include the unforgiven portion of the 1942 assessment. A small part of the deficiency in each case arises out of adjustments of expense, depreciation and contributions which the petitioners claimed in their individual returns and in partnership returns of Clyde Black & Son for the years 1942 and 1943. The petition contains no allegations of error concerning these minor adjustments and no evidence was offered in regard thereto. The major part of the deficiency asserted in each case arises out of the refusal of the Commissioner to recognize Maude R. Black and Helen L. Black, wives of Clyde W. Black and Julius B. Black, *302 respectively, as members of the partnership of Clyde Black & Son, as shown in the partnership returns filed with the collector of internal revenue for the district of Iowa, at Des Moines, for the years 1942 and 1943. The Commissioner ruled that only Clyde W. Black and Julius B. Black were partners and that they were each taxable during those years on one-half of the partnership income. The sole question presented for determination is whether or not during the years in question Maude R. Black and Helen L. Black were members of the partnership of Clyde Black & Son and each entitled to a one-fourth distributive share of the net income of the partnership. Findings of Fact The petitioners, father and son, are farmers residing near the City of Ames, Iowa, engaged in the business of raising hybrid seed corn. From the time Julius B. Black became a member of the firm of Clyde Black & Son they raised and sold two types of such hybrid seed corn, namely, single-cross for sale to other hybrid growers and doublecross for sale to farmers for planting. The single-cross type is produced by crossing two inbred lines of parent seed and the double-cross is produced by crossing two single-cross lines *303 of parent seed. In both instances two rows of what is referred to as the male seed is planted alternately with four to six rows of so-called female seed. The rows of male corn are allowed to grow normally but the rows of female corn are detassled as soon as the tassels begin to appear so that the silks on the ears of corn in the female rows are pollenated from the tassels in the male rows. This detasseling must be done at the proper time to prevent open-pollenation and constitutes quite an important and burdensome task in connection with hybrid seed corn production. Prior to 1934, neither Clyde W. Black nor Maude R. Black had any technical or practical training in hybrid seed corn production. They purchased seed stock from Iowa State College that year and information concerning the production of said seed corn was furnished them by the college. Some assistance was also given them by the school in connection with the marketing of their product. Some hogs, cattle, hay, small grain and other farm products were raised and marketed by Clyde Black & Son during the years in question but these products were largely incidental to the seed corn operation. Clyde W. Black, the father, is *304 62 years old. He graduated from Iowa State College agricultural school at Ames, Iowa, in 1910. Within a few years thereafter he married Maude R. Black and for many years was engaged in farming in Dallas County, Iowa. At that time he raised and sold open-pollenated seed corn. In the years 1918 to 1920, Clyde W. Black owned some land in Dallas County, Iowa, but between the years 1920 and 1934 his farming operations were not profitable and he lost all of his property of every kind and was indebted to banks and insurance companies to the extent of $1,400. Julius B. Black, the son, in 1934 was about 17 years old. He had finished high school and had entered Iowa State College in the autumn of 1933. In February, 1934, Clyde W. Black and his wife, Maude R. Black, desiring to help their son in completing his education at Iowa State College, rented a small farm of 26 acres on the outskirts of the City of Ames, Iowa, and moved to that city. Prior to moving to Ames, Clyde W. Black had suffered an injury to his foot that left him permanently lame, and at about the time of moving he had fallen and broken some ribs which incapacitated him for rendering much assistance in connection with the farm *305 operation during the year 1934. As a means of livelihood and to help support the family, including the son, Julius B. Black, he sold automobile insurance in the City of Ames. During that interval his wife took almost complete charge of the farm operations. During 1934 they started raising doublecross hybrid seed corn for sale to corn growers. They procured hired help to do the field work, except that they did the detasseling themselves. Only about 184 bushels of seed corn were raised during that first summer. Maude R. Black did all of the work of drying, sorting and preparing the corn for sale, and also did all of the advertising, corresponding, kept all books and records incident thereto, and did all work in connection with the sale of the seed corn and collection therefor. Although still operating on a small scale, they increased their production during the years 1935, 1936 and 1937. Clyde W. Black devoted more time to looking after the field or outside work. His wife assisted him regularly in the outside work and also managed and controlled all of the inside or office work, consisting of hiring help, advertising for and corresponding with purchasers, looking after the sale and *306 delivery to customers and making collections. She kept the books, answered telephone calls, and assisted in detasseling, sorting and grading the seed corn. Her various duties took from six to eight hours of her time daily. There is no evidence as to the amount of capital which Clyde W. Black and Maude R. Black may have accumulated during the years 1934, 1935, 1936 and 1937. The indications are that it was not a great amount. Julius B. Black graduated from Iowa State College in the spring of 1937. Among the courses which he had taken was one in cropbreeding and genetics. During the years while he was in college he had done outside work to help pay his way through school. He had acquired a few head of livestock which he kept on his father's small farm, and, during the summer of 1937, raised some single-cross hybrid corn. There is no evidence of the exact value of his livestock and seed corn but the indications are that it was worth only a few hundred dollars. In January, 1938, Clyde W. Black, Maude R. Black and Julius B. Black agreed orally to pool their resources and engage jointly in raising hybrid seed corn under the firm name of Clyde Black & Son. In May of that year, Julius *307 B. Black married Helen L. Black and the parties all agreed that she enter into the joint venture. At the time of her marriage she had about $200 in cash which she contributed to the business. At first, Helen L. Black devoted from six to eight hours of her time per day to assisting Maude R. Black in the management and control of the inside work of the business, devoting most of her time to single-cross matters. From 1938 to 1941 the farming operations rapidly increased until by the close of the latter year more than 640 acres of land were being used in raising hybrid seed corn. In 1939 an 80 acre farm was purchased in the names of Julius B. Black and Helen L. Black as co-owners, and in 1939 and 1940 between 75 and 80 additional acres of land were bought in the names of Clyde W. Black and Maude R. Black. Other lands were purchased in the name of Clyde Black & Son. All of these lands were paid for with funds drawn from the account of Clyde Black & Son. The deposits in that account were all from the sales of corn and other items produced on the farm. During the years 1938 to 1941, inclusive, neither Clyde W. Black, Maude R. Black, Julius B. Black nor Helen L. Black maintained a separate *308 bank account and neither of said parties was paid any salary or specific remuneration for services. All of the income or profit realized from the operation of the seed corn business was deposited in the Ames Trust & Savings Bank at Ames, Iowa, in the name of Clyde Black & Son, and all expenses, including the living expenses of the four above-said parties, were drawn out of said fund when and as needed. Each of the four parties was authorized to write checks on the account. In the month of February, 1941, petitioners and their wives discussed the future of the hybrid seed corn business and felt that the single-cross seed portion of the business should be developed as its possibilities were as great or greater than that of the double-cross portion of their business. In this connection they also discussed the fact that such further development would necessitate Maude and Helen devoting more time to the office work and Clyde and Julius more time to the field and outside work. They also discussed the advisability of hiring additional office or inside help, but the four of them agreed that Maude R. Black and Helen L. Black should take over the entire office management and hire domestic *309 help to run their respective homes. This conclusion was raached for the reason that during the selling and detasseling seasons the office hours were long and irregular and the parties in charge of the sales needed technical knowledge in regard to both types of corn; that it would, therefore, be practically impossible to get office help who had such technical knowledge or who would work long and irregular hours and, therefore, it was deemed advisable that Maude R. Black and Helen L. Black, both of whom possessed this technical knowledge, should continue to devote longer hours and remain in complete charge of the inside work of the business. The matter of compensation was discussed and it was agreed that they operate as a partnership. Each of the four would share equally in the profits and losses of the business. After this discussion, the plan of looking after the business was reorganized and two separate and distinct officers were created, one at the home of Clyde W. and Maude R. Black in Ames, Iowa, from which office all the double-cross seed business was handled, and another at the country home of Julius B. and Helen L. Black, R.F.D. #3, Ames, Iowa, from which all single-cross *310 seed business was handled. The office or inside work of double-cross seed was managed by Maude R. Black and the field or outside work by Clyde W. Black. The office or inside work relating to single-cross seed was managed by Helen L. Black and the field or outside work by Julius B. Black. Maude R. Black and Helen L. Black found it necessary to hire domestic help to look after household duties so that they could devote their entire time to the business. They worked 10 to 14 hours per day during the busiest season. They hired the farm help, took care of correspondence, filled orders for seed corn, made the collections, kept the payrolls, paid the help, answered the tllephones and kept books. Helen L. Black also handled the books and records kept in connection with the sale of hogs, cattle, hay, small grain and other matters incident to the operation of the business. In connection with the above plan they consulted an attorney in February, 1941, and explained to him the details of what had been agreed upon and asked him to draw up written partnership agreement embodying the plan. However, said attorney died some months after this consultation without having presented the written draft *311 of the agreement for their signature. During the years 1942 and 1943 the four hereinabove-mentioned parties operated the business of Clyde Black & Son in accordance with the oral agreement entered into early in 1941. The rapid growth of the business over the years 1939 to 1943, inclusive, is shown by the following table of gross income received in those years: Total
income from
Year
Single-cross
Double-cross
all sources
1939
$ 3,201.20
$13,707.85
$ 23,173.84
1940
5,678.42
26,283.30
39,391.67
1941
24,462.45
39,913.50
76,669.47
1942
60,229.60
37,735.97
122,317.04
1943
58,889.79
59,173.28
146,626.44
In the years prior to 1938 only a few seasonal employees were hired to plow, plant, cultivate the fields and help in the harvesting, sorting and grading of the crops. In 1942 and 1943 several year-round employees were employed to help with the outside work and during the detasseling season in June and July, from 50 to 100 temporary or seasonal employees were frequently hired. This was also true in October and November when the corn was harvested, sorted, graded and prepared for sale. The list of customers had also grown from a *312 comparatively small number in the beginning to 4,000 or 5,000 in 1942 and 1943. Sales were made to from 2,000 to 3,000 of those customers each year. During the taxable years 1942 and 1943, Maude R. Black and Helen L. Black devoted their full time to the business. Their work consisted of keeping all the books and records, writing checks and paying bills, interviewing and hiring detasselers, sorters and graders, arranging transportation of employees, keeping payrolls, inventories, answering telephones, preparing lists of customers, investigating credits, handling sales, handling correspondence and advertising, and other data incident to the inside or office end of the business. In 1942 and 1943, approximately $24,000 of government bonds were purchased with funds from the account of Clyde Black & Son and were divided equally among Clyde W. Black, Maude R. Black, Julius B. Black and Helen L. Black. In the same years $10,000 from the firm account was deposited in postal savings, one-fourth thereof being placed to the separate account of each. Partnership returns on forms 1065 and 1040F were filed by Clyde Black & Son for the years 1942 and 1943. The 1942 return shows a total net income *313 of $61,035.08 and names Clyde Black, Maude Black, Julius Black and Helen Black as equal partners entitled to $15,258.77 each. The 1943 return shows a total net income of $76,462.41 and names the four last abovenamed parties as equal partners entitled to $19,115.60 each. The Commissioner recognized a partnership between Clyde W. Black and Julius B. Black and refused to recognize Helen Black and Maude Black as partners in the business. In his deficiency notices he allowed the two last named parties salaries of $1,800 and $1,200 per year, respectively, as employees of Clyde Black & Son and added the balance of their distributive shares of income to the incomes of Julius B. Black and Clyde W. Black. It is this ruling and action of the Commissioner of which the petitioners complain. Opinion LEMIRE, Judge: The specifications for a husband and wife partnership which will be recognized for income tax purposes are set forth in Commissioner v. Tower, 327 U.S. 280, as follows: There can be no question that a wife and husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially *314 contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. * * * The evidence in this case shows that petitioner, Clyde W. Black, and his wife, Maude R. Black, began the hybrid seed corn business on a small scale with little or no capital in the spring of 1934. Maude R. Black had an interest in the business from the beginning. As a matter of fact, she managed all of the hybrid seed corn business, both office and field work, during the first year or two, while Clyde W. Black was physically incapacitated. The latter sold automobile insurance to help defray living expenses. Both of these parties, up to and including the year 1937, treated their earnings from the hybrid seed corn business and other income as belonging to them jointly. They had but one bank account and both were authorized to check on that account. In the year 1938 petitioner, Julius B. Black, and his wife, Helen L. Black, each made a small contribution of capital originating *315 with the contributor to the account of Clyde Black & Son, and from that time on the hybrid seed corn business was by agreement conducted by the four of them jointly and all devoted their entire time to the production of said seed corn and the farm business incidental thereto. The four abovementioned parties treated the earnings from the business as belonging to them jointly. Prior to 1942 and 1943, they had but one bank account, same being in the name of Clyde Black & Son, and each of the four was authorized to write checks on this account for all expenses. During all the years from 1938 to and including 1943, Maude R. Black and Helen L. Black had the control and management of what is referred to in the testimony as the inside or office work. The petitioners had charge of what is designated as the outside or field work. The so-called inside work was not limited to the answering of telephones, keeping the books and answering the correspondence. Among their many other duties Maude R. Black and Helen L. Black had absolute charge and control and complete responsibility for the finding and employing of farm help necessary to the production of hybrid seed corn. In 1942 and 1943, and *316 for some years prior thereto, they frequently hired 50 or 100 seasonal employees to detassel, harvest, sort or otherwise take care of the production of said seed corn and were compelled to keep in contact with large numbers of prospective employees so that help could be obtained in sufficient quantities when and as needed. Otherwise, their crop would be ruined for seed corn purposes as Iowa State College would not certify same unless detasseling and other care of the crop was looked after at the proper time and in the proper manner. They exercised complete management and control of the sale of seed corn produced and maintained lists of thousands of prospective customers whom they contacted annually by advertisement, circular or letter, for the purpose of disposing of their crops. In several cases under facts similar to those here involved we have recognized the wife as a partner and have held that the income belongs to her. H. D. Webster, 4 T.C. 1169; Felix Zukaitis, 3 T.C. 814, and Leo Marks, 6 T.C. 659. In the instant case we are satisfied from the evidence that Maude R. Black and Helen L. Black made contributions to capital and to the *317 management and control of the business. Furthermore, we are satisfied from the evidence that they contributed vital services to the business which was operated in the name of Clyde Black & Son. We are convinced that these services during the years 1942 and 1943 were not intermittent, negligible or inconsequential. They were continuous and valuable services. The evidence shows that their services contributed materially to the prosperity of the business. A partnership existed between petitioners and their wives during the years 1942 and 1943 and said partnership was an ordinary business partnership within the contemplation of the taxing statute. The Commissioner erred in his 1943 deficiency assessments. Decision will be entered under Rule 50.